UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KILLRAINE DEAN,

                       Plaintiff,

              -against-                **MEMORANDUM AND ORDER**

NEW YORK CITY, POLICE OFFICER          15-CV-8825 (LAK) (KNF)
KATHLEEN MYERS and POLICE OFFICER
BAKSH, individually, and in their capacity as
members of the New York City Police Department,

                       Defendants.
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

      In this action, the plaintiff asserted the following claims pursuant to 42 U.S.C. § 1983: (1) false arrest; (2) excessive use of force; (3) malicious prosecution; (4) denial of the right to a fair trial; (5) retaliatory prosecution; and (6) malicious abuse of process against New York City ("the City"), Police Officer Kathleen Myers ("P.O. Myers") and Police Officer Sheriff Baksh ("P.O. Baksh"). Thereafter, the plaintiff withdrew "his claims for False Arrest, Malicious Prosecution, Malicious Abuse of Process, and Retaliatory Prosecution and amends the claim for Failure to Intervene." Before the Court is the plaintiff's motion "to Compel Defendants to Produce Discovery," pursuant to Rule 37 of the Federal Rules of Civil Procedure, namely, responses to: (1) document request No. 4 from the Third Request for Production of Documents ("RPD3"); (2) document request Nos. 1-5 from the Fourth Request for Production of Documents ("RPD4"); (3) document request Nos. 1-4 from the Fifth Requests for Production of Documents ("RPD5"); and (4) three questions posed to the defendant's Fed. R. Civ. P. 30(b)(6) witness during the witness's deposition. The defendants oppose the motion.

1

*Plaintiff's Contentions*

The plaintiff contends that his RPD3 document request No. 4 seeks documents related to any training, manuals or instructions that P.O. Baksh "was given at the 34th Precinct and the Police Academy, relating to the use of pepper spray." On March 23, 2017, the Court directed the defendants to provide a writing indicating that "no documents or materials exist with respect to the pepper-spray training police officer Sheriff Baksh received after the New York City Police Department ['NYPD'] trained him initially respecting the use of pepper spray." The plaintiff asserts that, on March 30, 2017, the defendants provided the plaintiff a writing stating: "Except for the Patrol Guide, PO Baksh does not recall receiving any written materials on the use of O.C. spray." The plaintiff contends that this is an insufficient response because P.O. Baksh's recollection is irrelevant and the defendants failed to respond to RPD3 document No. 4 and did not state that materials do not exist related to the pepper-spray training of P.O. Baksh, as directed by the March 23, 2017 order.

The plaintiff asserts that RPD4 document request No. 6 seeks "all NYPD training materials regarding the use of mace, including, but not limited to, documents, manuals, guides, presentations, and audio and visual sources." The defendants objected on various grounds, including law enforcement privilege, without providing any privilege log. According to the plaintiff, the requested documents are relevant to his excessive use of force claim.

The plaintiff's RPD4 document request Nos. 1-3 seek "the DMV [Department of Motor Vehicle] search results, the DCJS [New York State Division of Criminal Justice Services] Search Results, and/or the DAS [Domain Awareness System] Lite search results from the search of Plaintiff's name and date of birth carried out by both PO Baksh and PO Myers at the time of Plaintiff's arrest and at any subsequent time on June 23, 2015." These requests are premised on

2

the testimony of P.O. Baksh that he performed a search of the plaintiff's name and date of birth in the "DAS lite program at the time of Plaintiff's arrest." The defendants objected on various grounds and asserted that, upon information and belief, no documents exist responsive to the request. However, the defendants failed to produce an affidavit stating that no such records exist.

The plaintiff's RPD5 document request Nos. 1-4 seek login records for P.O. Baksh and P.O. Myers from "the NYPD DAS System" for June 23 and 24, 2015, and "all NYSPIN [New York Statewide Police Information Network] requests using the NYPD DAS System" by P.O. Baksh and P.O. Myers concerning the plaintiff, on June 23 and 24, 2015. The plaintiff asserts that the RPD5 document request Nos. 1-4 are "premised on the FRCP 30(b)(6) deposition of Captain Michael Joy" ("Joy") and are relevant because P.O. Baksh and P.O. Myers "claim they were alerted, prior to the use of pepper spray, to an alleged warrant for Plaintiff" and PO Baksh "claims that the alleged warrant stated that Plaintiff was armed and dangerous."

The plaintiff contends that RPD4 document request No. 4, seeking June 23, 2015 telephone records for P.O. Myers's department telephone that would show "the phone call made to the agency that issued the warrant in question" is "based on the deposition testimony of PO Myers, who stated that she tried to call the agency that had issued the warrant on her department phone." He maintains that the defendants' assertion of law enforcement privilege concerning RPD4 document request No. 4 is meritless because the telephone records "would in no way disclose any law enforcement technique or interfere with any investigation," and any information "relating to sources, witnesses, non-parties, or other law enforcement personnel" can be redacted or disclosed under a protective order.

The plaintiff asserts that, in response to RPD4 document request No. 5, seeking "all photographs of Plaintiff taken by any New York City employee on June 23, 2015," the defendants produced a black and white photograph which is "grainy and not clear." The plaintiff followed up with a request for "the color or negative photographs of the Plaintiff" because he sustained injuries on his face as a result of the pepper spray, and the black and white photograph is insufficient. The defendants should be compelled to produce "the original film or an e-file."

The plaintiff served a notice of deposition pursuant to Fed. R. Civ. P. 30(b)(6), seeking to depose a person "with knowledge of the system that NYPD uses to search for outstanding warrants, arrest warrants, and anything similar that NYPD uses such as 'DASLite.'" According to the plaintiff, the defendants' Rule 30(b)(6) witness, Joy, was instructed not to answer three questions during his deposition: (1) "*Q: What other search can you do through the system? A: Vehicle search. . Q: And so with regards to vehicle, what information would you need for a vehicle?*"; (2) "*Q: You oversee the implementation of DAS, is that correct? A: From a technological perspective, yes. Q: And so you work with other aspects of the NYPD as to the use of DAS, is that correct? A. I'm not sure. Q: You explained to others* [sic] *individuals as to how the system needs to be used, is that correct?*"; and (3) "*Q: Does the NYPD have a list for out-of-state agencies which can be used to verify whether arrest warrants are currently valid? A: I don't know. The Warrant division would do most of that type of work. Or warrant section rather. Q: And what is the Warrant Division?*" The plaintiff maintains that the first question is relevant because he was initially stopped by the defendants in his vehicle and P.O. Myers testified that she ran a DMV search. The second question is relevant because it relates to Joy's knowledge of the "DAS system," and the third question is relevant because it was a follow-up question to Joy's answer.

4

*Defendants' Contentions*

The defendants contend that they have complied with the March 23, 2017 order when they "wrote to plaintiff and advised him that Police Officer Baksh does not recall receiving any other materials beyond the NYPD Patrol Guide. Notwithstanding that, Defendants are continuing to search for any other materials that may be responsive to this request and will provide them to plaintiff by May 10, 2017, should any be identified." Thus, RPD3 document request No. 4 is moot.

The defendants maintain that RPD4 document request No. 6, seeking training records for police officers other than P.O. Baksh, is irrelevant because the plaintiff does not allege that other police officers violated his rights by using pepper spray. Moreover, the plaintiff did not allege a claim for municipal liability based upon a purported failure to train and the request is not proportional to the needs of the case.

The defendants assert that the plaintiff failed to show that any document requests related to the arrest warrant in effect at the time of his arrest are relevant to any claims or defenses in this action. The defendants maintain that they disclosed to the plaintiff "results from an audit search of all NYSPIN requests related to plaintiff that were made on June 23, 2015 the date of plaintiff's arrest," making his "request for all NYSPIN requests" moot. Concerning "the DMV search results," the defendants assert that "the New York State Department of Motor Vehicles is not a City Agency, and accordingly the New York State Department of Motor Vehicle documents are not maintained by the City of New York" and not in the defendants' custody, possession or control. Moreover, DMV search results are irrelevant to claims and defenses in this action, and the plaintiff "cites to no evidence that any DMV search results provided any

5

information about a warrant." Concerning "the DCJS search results, DAS Lite search results and NYSPIN requests," Joy testified that: (a) "if an officer were to search for an arrest warrant using the DAS Lite system, there would be no record of that search"; (b) "DAS Lite accesses the NYSPIN system to conduct the warrant search"; (c) "the only record that a search had occurred would be through an audit of NYSPIN's records" and (d) "this audit would not show whether the search was conducted using DAS Lite, or any other system." Given that "there is no record of DCJS search results or DAS Lite search results and Defendants have already provided plaintiff with the relevant audit search," the plaintiff's requests related to search results are moot. To the extent that the plaintiff seeks NYSPIN search results for June 24, 2015, those records are not relevant because they occurred after the plaintiff's arrest. Moreover, the plaintiff "failed to show how the DAS Lite, DCJS, and DMV documents – much less the warrant at issue – are relevant to any party's claims or defenses," and the fact that "the officers knew about the existence of an arrest warrant for someone with the same or similar name and/or date of birth as plaintiff, prior to the use of pepper spray, is neither disputed nor relevant to plaintiff's excessive force claim." The plaintiff failed to "connect the officers' knowledge of that warrant with the use of pepper spray, and has not cited to any evidence in the record to suggest that Police Officer Baksh's use of pepper spray was related in any way whatsoever to the warrant." The defendants assert that the plaintiff failed to show that PO Myers's telephone records are relevant, and they are also protected by law enforcement privilege and implicate privacy concerns of non-parties.

Concerning the login records for DAS Lite, the defendants maintain that they are irrelevant because Joy testified "that the DAS Lite system does not record when an individual has logged off" and P.O. Baksh testified that "he conducted the DAS Lite search on the computer in his car," making the timing and identity of a person who logged into the computer "not

6

relevant to when the warrant search was conducted." The defendants contend that they have produced a copy of the only photograph of the plaintiff in their possession, custody and control and "[u]pon information and belief, no other documents responsive to plaintiff's request exist."

The defendants contend that the three questions posed to Joy are beyond the scope of the Rule 30(b)(6) deposition notice and irrelevant. With respect to the first question, Joy testified that "DAS Lite can conduct warrant searches as well as searches for vehicles. However, there was no testimony or other evidence that DASLite was used to conduct a vehicle search during this incident" and the plaintiff had an opportunity "to explore if the vehicle search was related to the search for an arrest warrant." The second question is also beyond the scope of the deposition notice, which "did not request a representative to speak on training individuals on the use of the DAS Lite system." The third question about the Warrant Division is beyond the scope of the deposition notice because Joy was not designated as a representative capable of testifying respecting the Warrant Division.

*Plaintiff's Reply*

The plaintiff contends that no excuse exists for the defendants' failure to provide NYPD materials used to train P.O. Baksh on the use of pepper spray and no justification for the defendants "unilaterally picking the arbitrary date of May 10, 2017, to respond." The plaintiff maintains that all NYPD materials used to train P.O. Myers on the use of pepper spray are relevant because she was present at the scene and had an opportunity to intervene to prevent P.O. Baksh from using pepper spray. According to the plaintiff, all document requests related to searches for the alleged arrest warrant are relevant since P.O. Baksh and P.O. Myers testified that they were alerted, prior to the use of pepper spray, to an alleged warrant stating that the plaintiff

7

"was armed and dangerous." Thus, the "alleged warrant goes directly to the officers' motivation for using the pepper-spray against Plaintiff." Moreover, "the various search results are relevant as to the credibility of PO Myers and PO Baksh" since P.O. Baksh's claim that he made a telephone call to the agency that issued the alleged warrant is false, as the defendants stated in their April 3, 2017 letter that no such call was ever made. Similarly, P.O. Myers asserts that she ran "the ID search" and DMV search of the plaintiff's name and date of birth at the time of his arrest and that she tried to call the agency that issued the alleged warrant on her department telephone. Thus, these records are relevant to the plaintiff's denial of a fair trial claim that involves false statements made by P.O. Myers and P.O. Baksh. The warrant audit search provided by the defendants does not disclose who performed the search and, since both P.O. Myers and P.O. Baksh claim to have performed the search at the scene of the incident, the login records are relevant to show who actually performed the search. The plaintiff contends that P.O. Myers's telephone records are not privileged and any privacy concerns can be addressed by redaction or disclosure under a protective order. The plaintiff asserts that "there must exist an original or electronic file" of the photograph that the defendants provided to the plaintiff and no excuse was given for failing to provide it.

The plaintiff contends that the questions posed to the defendants' Rule 30(b)(6) witness were within the scope of the deposition notice. "Despite outlining the subject of the deposition, defense counsel then objected to a question based directly on this subject," namely, "And so with regards to vehicles, what information would you need for a vehicle?" Similarly, the question "You explained to others [sic] individuals as to how the system needs to be used, is that correct?" is within the scope of the deposition notice, as it relates "to the witness's knowledge and use of DAS." The plaintiff asserts that the question "And what is the Warrant Division" is a follow-up

8

question directly related to the system used by the NYPD to search for outstanding warrants and the process of verifying if the warrants are still valid, about which the witness testified.

*Legal Standard*

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.
>
> Fed. R. Civ. P. 26(b)(1).
>
> A party may serve on any other party a request within the scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.
>
> Fed. R. Civ. P. 34(a)(1)(A).

"For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).

"In its notice . . . a party may name as a deponent . . . a governmental agency or other entity and must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6).

> An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2).

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if . . . a party fails to produce documents." Fed. R. Civ. P. 37(a)(3)(B)(iv). "For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Motions to compel, pursuant to Fed. R. Civ. P. 37, are left to the sound discretion of the court. See United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000).

***Application of Legal Standard***

<u>RPD3 Document Request No. 4</u>

The defendants' writing to the plaintiff, stating that "[e]xcept for the Patrol Guide, PO Baksh does not recall receiving any written materials on the use of O.C. spray" does not comply with the Court's March 23, 2017 order because it does not indicate, as the order requires, "that no documents or materials exist with respect to the pepper-spray training police officer Sheriff Baksh received after the New York Police Department trained him initially respecting the use of pepper spray." The Court's March 23, 2017 order did not authorize the defendants to continue searching "for any other materials that may be responsive to this request" and to "provide them to plaintiff by May 10, 2017." Thus, compelling the defendants to respond to RPD3 document request No. 4 is warranted.

10

RPD4 Document Request No. 6

The defendants' objection that RPD4 document request No. 6 is overly broad is sustained because the request is not limited in any way. In his reply, the plaintiff contends that "all NYPD materials used to train PO Myers on the use of pepper spray are relevant" because P.O. Myers was present at the scene and had an opportunity to intervene to prevent P.O. Baksh from using the pepper spray, seemingly narrowing his original RPD document request No. 6. However, the plaintiff's motion for leave to amend the complaint to include a failure to intervene claim against P.O. Myers was denied. The governing pleading contains no allegations that P.O. Myers or any other police officer except P.O. Baksh used the pepper spray. Thus, narrowing the scope of the initial request to all NYPD materials used to train P.O. Myers on the use of pepper spray is not sufficient to save it because the requested materials related to P.O. Myers are irrelevant to the remaining claims in this action. Accordingly, the defendants need not respond to RPD4 document request No. 6.

RPD4 Document Request Nos. 1-3

RPD4 document request No. 1, seeking "the DCJS Search Results and/or the DASLite search results from the search of Plaintiff's name and date of birth carried out by PO Baksh at the time of Plaintiff's arrest and at any subsequent time on June 23, 2015" is relevant to the plaintiff's claims. The defendants' objections to RPD4 document request No. 1 are overruled. That Joy "testified that if an officer were to search for an arrest warrant using the DAS Lite system, there would be no record of that search" is irrelevant to RPD4 document request No. 1 because that request does not seek results from a "search for an arrest warrant" about which Joy testified. Accordingly, the defendants' conclusory contention that "there is no record of DCJS

11

search results or DAS Lite search results" is not supported by evidence. Thus, compelling the defendants to respond to RPD4 document request No. 1 is warranted.

RPD4 document request No. 2, seeking "the DCJS Search Results and/or the DASLite search results from the search of Plaintiff's name and date of birth carried out by PO Myers at the time of Plaintiff's arrest and at any subsequent time on June 23, 2015" is relevant to the plaintiff's claims. The defendants' objections to RPD4 document request No. 2 are overruled for the same reasons for which RPD4 document request No. 1 objections are overruled, and compelling the defendants to respond to RPD4 document request No. 2 is warranted.

RPD4 document request No. 3, seeking "the search results from the DMV search carried out by PO Myers at the time of Plaintiff's arrest and at any subsequent time on June 23, 2015," is relevant to the plaintiff's claims. The defendants contend in their memorandum of law, without any evidence to support the contention, that "the New York State Department of Motor Vehicles is not a City Agency, and accordingly, the New York State Department of Motor Vehicles documents are not maintained by the City of New York and therefore are not in Defendants' custody, possession, or control." Even assuming that: (i) "the New York State Department of Motor Vehicle is not a City Agency"; (ii) "the New York State Department of Motor Vehicles documents are not maintained by the City of New York," that would not establish that "the search results from the DMV search carried out by P.O. Myers at the time of Plaintiff's arrest and at any subsequent time on June 23, 2015" are not, as the defendants claim, "in Defendants' custody, possession, or control." The plaintiff's RPD4 document request No. 3 does not seek "the New York State Department of Motor Vehicles documents" and the defendants point to no evidence for the proposition that "the search results from the DMV search carried out by PO Myers at the time of Plaintiff's arrest and at any subsequent time on June 23, 2015" involve,

necessarily, "New York State Department of Motor Vehicles documents." The defendants' objection that the plaintiff's RPD4 document request No. 4 is not relevant since no evidence exists "that any DMV search results provided any information about a warrant" is overruled because the request is relevant to the plaintiff's denial of a right to a fair trial claim, the scope of which is broader than "any information about a warrant." Therefore, compelling the defendants to respond to RPD4 document request No. 3 is warranted.

Moreover, the defendants contend that the plaintiff's RPD4 document request Nos. 1 and 2 concerning "DASLite" search results are moot because Joy testified that: (a) "if an officer were to search for an arrest warrant using the DAS Lite system, there would be no record of that search"; (b) "the only record that a search had occurred would be through an audit of NYSPIN's record"; and (c) "this audit would not show whether the search was conducted using DAS Lite, or any other system," referring to pages "59:23-61:20" of Exhibit B in opposition to the motion. Those pages contain the following exchange:

> Q. If a warrant search was done for Mr. Dean on June 23rd or June 24th, 2015, using that system you just mentioned, would there be a record of it?
> A. It would be the exact same record that exists for DAS from NYSPIN. You would have the record that the run - - that the checklist conducted.
> Q. Okay. I asked before about whether records were kept of any searches that were submitted to NYSPIN. Would this be different in any way from the NYSPIN searches that were conducted through DAS?
> A. No. From NYSPIN's perspective, it doesn't matter if DAS or Z Finest or any other application conducted the search. NYSPIN handles it similarly and audits it similarly.
> Q. But with regards to documentation of the submission of that search, is there any difference between ADW or DAS?
> A. No.
> ...
> Q. My question is whether if I make a request for all searches conducted for this name under DASLite to NYSPIN, by Myers or Baksh, would that also generate any search that was done through ADW?
> A. If you're requesting specifically from DAS, then no.
> Q. But if I request it from ADW as well, could there be a separate search that was conducted through that?

13

> A. It would just be the requests to NYSPIN.
> Q. Okay.
> A. It's only requests to NYSPIN.
> Q. Okay. Though ADW?
> A. Anything. It doesn't - - NYSPIN doesn't matter. It doesn't matter from NYSPIN's perspective. It's all the same.
> Q. So when documents come back, it's not from ADW or DAS, it's from NYSPIN?
> A. Correct.

However, Exhibit B pages "59:23-61:20" do not support the defendants' contentions. To the extent that Joy's testimony on pages "59:23-61:20" concerns conducting a warrants search using "DAS," Joy testified that "[y]ou would have the record that the run - - that the checklist conducted," which contradicts the defendants' contention that "if an officer were to search for an arrest warrant using the DAS Lite system, there would be no record of that search." The defendants' contentions that Joy testified that (i) "the only record that a search had occurred would be through an audit of NYSPIN's record" and (ii) "this audit would not show whether the search was conducted using DAS Lite, or any other system," are unsupported by Joy's testimony that the defendants reference. Although the basis for Joy's personal knowledge concerning "NYSPIN" or "an audit of NYSPIN" is not clear and Joy was neither noticed nor designated to testify about "NYSPIN," Joy only testified that "[f]rom NYSPIN's perspective, it doesn't matter if DAS or Z Finest or any other application conducted the search. NYSPIN handles it similarly and audits it similarly," not that "the only record that a search had occurred would be through an audit of NYSPIN's record" and "this audit would not show whether the search was conducted using DAS Lite, or any other system." Furthermore, the defendants' reliance on Joy's testimony concerning "DCJS search results" is erroneous because they concede that Joy "provided no testimony on DCJS records." Thus, the defendants' conclusory contention that "there is no record of DCJS search results or DAS Lite search results" is not supported by evidence and does

not moot the plaintiff's RPD4 document request Nos. 1 and 2. The defendants must respond to the plaintiff's RPD4 document request Nos. 1-3.

### RPD5 Document Request Nos. 1-4

RPD5 document request Nos. 1-4 seek "all login records for PO Baksh [and PO Myers] from the NYPD DAS System" and "all NYSPIN requests using NYPD DAS System from PO Baksh [and PO Myers] related to Killraine Dean," on June 23 and 24, 2015. The defendants contend that "the log-in records for DAS Lite" are irrelevant because Joy testified "that the DAS Lite system does not record when an individual has logged off" and PO Baksh "testified that he conducted the DAS Lite search on the computer in his car," so "when and who logged into the computer is not relevant when the warrant search was conducted." Joy's testimony "that the DAS Lite system does not record when an individual has logged off" does not make the plaintiff's requests irrelevant because his requests seek "login records," not logoff records and Joy testified that a record is made when a police officer logs in to DAS Lite and includes the date and time and the user account information. The defendants' objection that RPD5 document request Nos. 1-4 seek irrelevant information is overruled because that requested information is relevant to the plaintiff's claims and must be produced. The warrant audit disclosed to the plaintiff is insufficient and the defendants must respond fully to RPD5 document request Nos. 1-4.

### RPD4 Document Request No. 4

RPD4 document request No. 4 seeks telephone records for P.O. Myers's department telephone for June 23, 2015, "showing the phone call made to the agency that issued the warrant in question." The defendants objected "on the basis of the law enforcement privilege, and to the

15

extent it implicates the privacy and security concerns of non-parties." The defendants' objections are overruled. The defendants failed to produce a privilege log and explain how or why the law enforcement privilege applies with respect to this document request or why any non-party privacy concerns cannot be addressed by redactions or a protective order. RPD4 document request No. 4 is narrow and does not seek all telephone records for P.O. Myers's department telephone for June 23, 2015, but only those "showing the phone call made to the agency that issued the warrant in question," given that P.O. Myers testified that she made a telephone call to the agency that issued the alleged arrest warrant at issue. RPD4 document request No. 4 is relevant to the plaintiff's claims and narrowly tailored; thus, the defendants must respond to it.

### RPD4 Document Request No. 5

RPD4 document request No. 5 seeks "all photographs of Plaintiff taken by any New York City employee on June 23, 2015, including but not limited to, any and all photographs taken during the processing of Plaintiff at the 34th Precinct. Plaintiff requests exact duplicates in color of the original photographs." The defendants objected on various grounds, referring to the black and white copy of "the Prisoner Movement Slip Photograph," produced previously, which the plaintiff contends is of poor quality. The defendants' boilerplate objections are overruled. The defendants now contend that "[u]pon information and belief, no other documents responsive to plaintiff's request exist." However, the defendants' contention is not supported by evidence showing that any search was performed and no other responsive photographs exist as a result of such a search. Therefore, the defendants must respond to RPD4 document request No. 5.

Rule 30(b)(6) Questions

The plaintiff's Rule 30(b)(6) deposition notice required the defendants to provide for deposition an NYPD member "with knowledge of the system that NYPD uses to search for outstanding warrants, arrest warrants, and anything similar that NYPD uses such as 'DASLite.'" The defendants objected that the three questions quoted above are beyond the scope of the notice and directed Joy not to answer the first question at issue, "And so with regards to vehicles, what information would you need for a vehicle?" The defendants' instruction not to answer the first question at issue based on their objection that it is beyond the scope of the notice was improper and in contravention of Rule 30(c)(2) because the defendants did not invoke any privilege or enforce a limitation order or present a motion to the Court under Rule 30(d)(3). The question "And so with regards to vehicles, what information would you need for a vehicle?" is within the scope of the Rule 30(b)(6) deposition notice, as it is related to Joy's testimony about "other search[es]" that can be done "through the system." The Rule 30(b)(6) deposition notice required the defendants to provide for deposition a witness with knowledge of "anything similar that NYPD uses such as "DASLite,"" without limitation to any warrants, and Joy was testifying about various searches that can be done "through the system." Accordingly, the defendants' objection to the first question is overruled.

The defendants objected that the second question, "You explained to other individuals as to how the system needs to be used, is that correct?," is beyond the scope of the notice because it "did not request a representative to speak on training individuals on the use of the DAS Lite system." The defendants' objection to the second question is sustained.

17

The defendants objected that the third question, "And what is the Warrant Division?," is beyond the scope of the notice because "Joy has not been designated as a representative capable of testifying on the 'Warrant Division.'" The defendants' objection is sustained. When asked whether "the NYPD have a list of out-of-state agencies which can be used to verify whether arrest warrants are currently valid," Joy answered "I don't know. The Warrant Division would do most of that type of work. Or warrant section rather." That Joy speculated about what division or section would do "that type of work" after he answered "I don't know" did not extend the scope of the notice to questions concerning a particular NYPD division or section. Contrary to the plaintiff's contention, this question was not a "follow-up question . . . directly related to the system that NYPD uses to search for outstanding warrants," but was a question asking Joy to define the Warrant Division. Accordingly, the defendants' objection to the third question is sustained.

The defendants requested that they "be permitted to submit written responses" to any question that must be answered, "rather than reopening the 30(b)(6) deposition." In his reply, the plaintiff did not oppose the defendants' request. In the spirit of Rule 1 of the Federal Rules of Civil Procedure, answering the first question in writing is warranted.

***Conclusion***

For the foregoing reasons, the plaintiff's motion, Docket Entry No. 59, is granted, in part, and denied, in part. On or before July 17, 2017, the defendants must satisfy their discovery obligations as explained above, including providing an affidavit to the plaintiff indicating, where applicable, that no responsive documents exist, after the required searches were performed. Barring exceptional circumstances, no application for an extension of time to comply with this

order will be entertained. Failing to comply timely with this order will subject the defendants to sanctions.

Dated: New York, New York
July 6, 2017

SO ORDERED:

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

*dean2.mo*